1  John L. Krieger (Nevada Bar No. 6023)
   LEWIS AND ROCA LLP
2  3993 Howard Hughes Parkway, Suite 600
   Las Vegas, Nevada  89169
3  Telephone: (702) 949-8200
   Facsimile: (702) 949-8398
4  JKrieger@LRLaw.com

5  Attorney for Defendants
   *Vote for the Worst, LLC,*
6  *Nathan E. Palmer,*
   *and David J. Della Terza*
7

8                    **UNITED STATES DISTRICT COURT**

9                           **DISTRICT OF NEVADA**

10

11 RIGHTHAVEN, LLC, a Nevada limited-        Case No.: 2:10-CV-01045-KJD-RJJ
   liability company
12
                     Plaintiff,              **DEFENDANTS' MOTION TO DISMISS**
13       vs.                                 **FOR LACK OF PERSONAL**
                                             **JURISDICTION**
14 VOTE FOR THE WORST, LLC, an Utah
   limited-liability company; NATHAN E.
15 PALMER, an individual; and DAVID J.
   DELLA TERZA, an individual
16
                     Defendants.

17         Pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), and Local

18 Rule of Civil Practice 7-2, Defendants Vote for the Worst, LLC, Nathan E. Palmer, and David J.

19 Della Terza, by and through their counsel, hereby move this Court to Dismiss Plaintiff's

20 Complaint for Lack of Personal Jurisdiction.  Defendants submit this Memorandum of Points and

21 Authorities in support of its Motion, by the accompanying declarations of Nathan E. Palmer  (the

22 "NEP Decl."), David J. Della Terza (the "DJDT Decl.") and Nikkya Williams (the "Williams

23 Decl."), the exhibits attached thereto, and any oral argument the Court may allow.

24                    **MEMORANDUM OF POINTS AND AUTHORITIES**

25         Plaintiff Righthaven LLC ("Righthaven") alleges that Defendants have infringed its

26 copyright when a forum user on Defendants' website posted one third of a news article on page 8

27 of a forum, which was subsequently removed by Defendants before Plaintiff filed its lawsuit.

28 Righthaven alleges that although it was not the original author or copyright holder, it obtained the

copyright via transfer on June 21, 2010.  The article itself was created by the *Las Vegas Review-Journal* and published on April 11, 2010.

Defendants respectfully submit that Righthaven's Complaint should be dismissed because this Court lacks personal jurisdiction over Defendants, pursuant to Federal Rule of Civil Procedure 12(b)(2), because Defendants' limited contacts with the state of Nevada do not satisfy the demands of federal due process, and, even if they did, the exercise of jurisdiction over Defendants would be unreasonable.  VFTW's non-commercial website did not target Nevada nor is there any evidence of any attempt by Defendants to aim the site to Nevada residents.  Defendants Nathan E. Palmer and David J. Della Terza have no contacts with Nevada.  The contacts are too *de minimis* to invoke personal jurisdiction.

I.   **STATEMENT OF UNDISPUTED FACTS**

Plaintiff Righthaven LLC ("Righthaven"), a Nevada limited-liability company that was incorporated on January 14, 2010, has its principal place of business in Nevada.  It appears that Righthaven entered into a contract with Stephens Media LLC ("Stephens Media"), the company that owns the newspaper *Las Vegas Review-Journal* ("JVRJ"), wherein Stephens Media assigned to Righthaven some or all of its exclusive rights in "NORM: 'Idol' finalists keep busy in Las Vegas" on June 21, 2010.

Vote for the Worst LLC ("VFTW") is a limited liability company in good standing incorporated in the State of Utah.  Decl. of Nathan E. Palmer ("NEP Decl."), ¶ 3.  Its principal place of business is in Utah.  (*Id.*)  VFTW has no physical presence in Nevada.  (*Id.* ¶ 5).  VFTW is co-owned by Defendants Nathan E. Palmer and David J. Della Terza, residents of Utah and Illinois, respectively.  (*Id.* ¶ 3); Decl. of David J. Della Terza ("DJDT Decl."), ¶ 3.  VFTW has no office and no employees in this state, nor has it done anything in Nevada.  (NEP Decl. ¶¶ 4-5.)  VFTW was set up by a couple of friends to support entertaining, yet not necessarily talented, contestants on American Idol.  (*Id.* ¶ 7.)

VFTW is not a membership organization.  People have an opportunity to participate in forums and discuss current events on the website.  There is no charge for participating.  (*Id.*)  VFTW does not ask users to tell them their physical address, so VFTW has no way of knowing

1  whether participants are from Nevada, nor is it relevant to VFTW's organizational purpose. (*Id.*
2  ¶¶ 7-8.)
3        Traffic to VFTW for the first quarter of 2010 was 2,129,702 visitors. (*Id.* ¶ 8.) A visit to
4  the site is logged each time an Internet user lands on the site's homepage. (*Id.*) VFTW is unable
5  to determine how many of these visits came from the same computer or user. (*Id.*) VFTW does
6  not have actual visitor numbers by State, but the most recent data suggests that Nevada visitors
7  represent 0.49% (10,447 visitors / 2,129,702 total) of total visitors. (*Id.*)
8        On April 11, 2010, approximately 1/3 of an article from the *Las Vegas Review Journal*,
9  with a link back to LVRJ's website, was posted by an anonymous user with an IP address from
10 India onto the eighth page of a forum discussing American Idol contestant song lists. (*Id.* ¶ 9.)
11 While the article that was posted to VFTW's forums dealt with an American Idol event in Nevada,
12 nothing about the posting on VFTW targeted Nevada or its residents; in fact, according to sampled
13 data from Google Analytics, zero (0) users from Nevada visited the forum page where a portion of
14 the allegedly infringing article was temporarily posted. (*Id.*)
15       VFTW is a non-commercial website, although it has a link to Café Press so t-shirts with
16 "Vote for the Worst" can be purchased. Café Press provides a negligible amount of income; profit
17 from Café Press from June 2009 through May 2010 was $33.76. There is no record of any VFTW
18 merchandise being sold to persons in Nevada. (*Id.* ¶ 7.) The website, however, does contain
19 advertising through Google AdSense. (*Id.* ¶ 9.) Yet VFTW received essentially no income from
20 the forum at issue—at most, Google Ad revenue from that forum constituted $0.01 of income (1
21 penny). (*Id.* ¶ 9.)
22       Defendants did not know that the portion of the LVRJ article was posted. (*Id.* ¶ 10);
23 (DJDT Decl. ¶ 4.) LVRJ never asked Defendants to remove the portion of the article. (NEP Decl.
24 ¶ 10.) Righthaven appears to have received rights to the article in question ("Idol' finalists keep
25 busy in Las Vegas") on June 21, 2010. *See* Compl. Ex. 4. At no time did Righthaven request that
26 Defendants remove the allegedly infringing portion of an article. (*Id.* ¶ 10); (DJDT Decl. ¶ 4.)
27       Nonetheless, after Defendants encountered the allegedly infringing portion of a LVRJ
28 article, they promptly removed the article from the forum—before this lawsuit was filed. (NEP

Decl. ¶ 11.) Thus, the article that is the subject of Righthaven's claim is no longer on the VFTW website, nor will it be in the future. (*Id.*) Despite no communication with Defendants by either the LVRJ or Righthaven, Righthaven filed this lawsuit on June 28, 2010, against Defendants because the article in question was temporarily posted by a forum user on Defendants' website. Righthaven seeks both preliminary and permanent injunctions prohibiting Defendants from reproducing the "NORM: 'Idol' finalists keep busy in Las Vegas" article, retention of any evidence of use of the work, a court-ordered transfer of ownership of the http://www.votefortheworst.com/ domain to Righthaven, and statutory damages with pre- and post-judgment interest.[1]

Defendants received legal notice of the lawsuit on July 12, 2010.

## II.   LEGAL STANDARDS

Subject matter jurisdiction and personal jurisdiction are constitutional prerequisites to the adjudication of any claim. Lack of subject matter jurisdiction is an absolute affirmative defense that cannot be waived, and a court has no discretion to adjudicate a claim when the court finds that subject matter jurisdiction does not lie. *See U.S. v. Cotton*, 535 U.S. 625, 630 (2002) ("[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived."). A decision on the merits in such a case is void. *See Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005) ("[An] absence of jurisdiction altogether deprives a federal court of the power to adjudicate the rights of the parties.").

With respect to personal jurisdiction, a plaintiff submits to the jurisdiction of a forum by filing suit there. But when a defendant asserts lack of personal jurisdiction as an affirmative defense pursuant to Federal Rule of Civil Procedure 12(b)(2), a court must satisfy itself of jurisdiction before proceeding to the merits of the case. The court may find that it has general personal jurisdiction, specific personal jurisdiction, or no jurisdiction at all. *Boschetto v. Hansing*,

---

[1] Defendants are prepared to stipulate to the injunctions. In fact, as noted, the portion of the article that the user posted to VFTW forums was removed before the lawsuit was filed. (Decl. of Nathan E. Palmer ¶ 11.) The transfer of its domain, however, is an illegitimate request for relief, and Defendants will move to strike it under separate motion. The actual damages were probably, at best, $.01 (one penny). (*Id.* ¶ 9.)

539 F.3d 1011, 1016 (9th Cir. 2008). If the court concludes that it lacks jurisdiction over the defendants, it has no discretion to proceed to the merits of the case.

In an effort to avoid dismissal of this case, Righthaven peppered its Complaint with a series of legal conclusions (e.g., "Vote For The Worst purposefully directs activities at Nevada residents" – Compl. ¶ 19), but "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009). Accordingly, it would be inappropriate—especially in the context of a motion to dismiss for lack of subject matter and personal jurisdiction—to bestow any assumption of truth on the assertion of no more than legal conclusions. *See Iqbal*, 129 S.Ct. at 1950.

Under these standards, Plaintiff's Complaint should be dismissed because the Plaintiff has not established it has standing, and therefore the Court lacks subject matter jurisdiction, and because the Court lacks personal jurisdiction over Defendants.

### III.  ARGUMENT

#### A. Righthaven Does Not Have Standing To Sue (And The Court Lacks Subject Matter Jurisdiction) Because Righthaven Has Failed To Allege That It Owned The Copyrights At Issue At The Time Of The Alleged Infringement

While "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled to bring actions for infringements of that right occurring during the period of its ownership," *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991), **a plaintiff who fails to show ownership of a valid copyright at the time of infringement lacks standing to sue for any infringement that occurred prior to its ownership of those rights**. *See Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) ("in order for a plaintiff to be 'entitled . . . to institute an action' for infringement, the infringement must be 'committed while he or she is the owner of' the particular exclusive right allegedly infringed."). "Standing to assert a copyright claim is a jurisdictional requirement, and the Court must dismiss an action for lack of subject matter jurisdiction if it determines the plaintiff lacks standing." *Giddings v. Vision House Production, Inc.*, 584 F. Supp. 2d 1222, 1229 (D. Ariz. 2008) (citing *Lewis v. Casey*, 518 U.S.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada  89169

546470.1

343, 349 n.1 (1996)).  Here, the Court lacks subject matter jurisdiction and should dismiss this case because Righthaven has failed to allege or otherwise demonstrate that it was the owner of the copyrights at issue **at the time of the alleged infringement**.

The Complaint alleges that Righthaven is the owner of the copyrights in "NORM: 'Idol' finalists keep busy in Las Vegas" (the "Work").  (Compl. ¶ 25.)  The Complaint further alleges that: "**on or about** April 12, 2010, the Defendants reproduced the Infringement on the Website." (Compl. ¶ 28.)  (Emphasis added.)  The Complaint, however, does not allege that Righthaven was the owner of the copyrights *at the time of the alleged infringement*.

Even worse, it appears that Righhaven was not, in fact, the copyright owner at the time of the alleged infringement.  The Work complained of contains a copyright notice.  In every case, the notice states: "Copyright © Las Vegas Review-Journal."  The Las Vegas Review-Journal is the most widely published newspaper in Clark County, Nevada.  It is owned and operated by Stephens Media, LLC, who has registered the name "Las Vegas Review-Journal" as a fictitious firm name in Clark County, Nevada.  (*See* Ex. A to Williams Decl., LVRJ FFN Filing.)  Copyrights vest in the author of a work when the work is first fixed into tangible form.  *See Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737, 109 S. Ct. 2166, 2171, 104 L. Ed. 2d 811, 822 (1989); 17 U.S.C. § 201(a).  If the author is an employee, the employer will own the work under the "work for hire" doctrine.  *Id*.  Here, the Work is dated April 11, 2010, and contains a statement at the end of the article indicating that it was written by "Norm Clark," and provides contact information for Mr. Clark including a LVRJ email address. (See Exhibit 2 to Plaintiff's Complaint.)  Thus, it appears that the Work was written by Mr. Clark as an employee of Stephens Media LLC.  Under the "work for hire" doctrine Stephens Media LLC was the author of the work, and, therefore, was the initial owner of all copyrights in the Work.  This analysis is consistent with Righthaven's Exhibit 4.  It states that, at the time the copyright application was filed, Stephens Media LLC was the author of the Work.  It also states that Righthaven succeeded to the copyrights in the Work as a result of "Transfer: By written agreement," but does not give a date when the alleged transfer occurred.  While copyrights may be assigned, and while Stephens Media LLC

/ / /

may have, in fact, assigned its copyrights to Righthaven, there is no allegation that Stephens Media LLC did so on or prior to April 12, 2010, the date of the alleged infringement.

Because Righthaven was not the owner of the copyrights in the Work on the date of the alleged infringement, April 12, 2010, it does not have standing to sue, the Court lacks subject matter jurisdiction, and the Complaint must be dismissed.

> **B.    The Court Lacks Personal Jurisdiction Over Defendants VFTW, Nathan E. Palmer, and David J. Della Terza because Defendants' Contacts with Nevada are Insufficient to Satisfy the Requirements of Federal Due Process.**

The basis for personal jurisdiction over a non-Nevada resident in Nevada's courts is set forth in the Nevada long-arm statute. That statute is coextensive with the Due Process Clause of the U.S. Constitution. *See* Nev. Rev. Stat § 14.065. Thus, in determining whether the exercise of jurisdiction over a non-Nevada resident by a Nevada court is proper, federal due process analysis applies.

In the case of a corporate defendant, the requirement of "presence" in the forum state "may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945).

Where a defendant is not physically present in the forum state but maintains a website that is accessible to forum residents, that, in and of itself, is insufficient to create sufficient contacts to confer personal jurisdiction. *Cybersell Inc. v. Cybersell Inc.*, 130 F.3d 414, 418 (9th Cir. 1997), citing *Bensusan Restaurant Corp. v. King*, 937 F. Supp 295, 297 (S.D.N.Y. 1996); *see also Panavision Int'l, LP v. Toeppen*, 141 F.3d 1316, 1320-21 (9th Cir. 1998).

The Ninth Circuit and the District of Nevada apply the "sliding scale" test articulated in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), to determine whether personal jurisdiction lies in the forum state. *See Gator.com Corp. v. L.L. Bean, Inc.*, 341 F.3d 1072 (9th Cir. 2003) (applying the sliding scale test to determine whether personal jurisdiction existed):

> [E]ven if the only contacts L.L Bean had with California were through its virtual store, a finding of general jurisdiction in the instant case would be consistent with the "sliding scale" test that both our own and other circuits have applied to

internet-based companies.  *See, e.g.*, *Cybersell*, 130 F.3d at 417-19.  This test requires both that the party in question "clearly [do] business over the Internet," *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), and that the internet business contacts with the forum state be substantial or continuous and systematic.  *See Revell v. Lidov*, 317 F.3d 467, 470-71 (5th Cir. 2002); *accord Coastal Video Comm. Corp. v. Staywell Corp.*, 59 F. Supp. 2d 562, 571 (E.D. Va. 1999).  Recognizing that an online store can operate as the functional equivalent of a physical store, the test does not require an actual presence in the state.  Rather, the nature of the commercial activity must be of a substantial enough nature that it "approximate[s] physical presence."  *Bancroft & Masters, Inc. v. August Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000), citing *Gates Learjet v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984).

341 F.3d at 1079-1080; *see also Medina Mining Inc. v. Amunategui*, 237 F. Supp. 2d 1132, 1135-38 (D. Nev. 2002) (applying both the sliding scale test and the "effects test" to determine whether personal jurisdiction existed).

      Under this test, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of *commercial activity* that [the defendant] conducts over the Internet." *Zippo*, 952 F. Supp. at 1124 (emphasis added).  More specifically, at one end of the spectrum are situations where a defendant clearly does business over the Internet with a significant number of residents of a certain jurisdiction.  If the defendant enters into contracts with residents of that jurisdiction that involve the knowing and repeated transmission of goods over the Internet, then personal jurisdiction is proper.  At the opposite end are situations where information is simply posted on an information-only website, which website happens to be accessible around the world.  A passive website that does little more than make information available to those who are interested in it is not grounds to invoke personal jurisdiction.  The middle ground is occupied by interactive websites where users can exchange information and conduct business.  In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information occurs on the website. *Zippo*, 952 F. Supp. At 1124 (citations omitted).

      In this case, no defendants are physically present in Nevada.  No defendants are residents of Nevada, VFTW is not incorporated here, nor does VFTW maintain an office or have any employees here.  (NEP Decl. ¶ 2-5); (DJDT Decl. ¶ 2.)  VFTW has not designated an agent for service of process in this state, nor has it engaged in any print or broadcast advertising.  (NEP

Decl. ¶ 5.) The only "presence" that VFTW has in the state is its essentially non-commercial website, which is accessible to residents of Nevada in the same way that it is accessible to users anywhere in the free world. (*Id.* ¶ 6.) This court must first determine, therefore, where along the sliding scale VFTW's website falls. If it is passive, it is "not grounds for the exercise of personal jurisdiction." *Zippo*, 952 F. Supp. at 1124. If, however, VFTW clearly conducts intentional business with Nevada residents, then personal jurisdiction is proper. *Id.* If VFTW's website is somewhere in the middle, the court must consider "the level of interactivity and the commercial exchange of information that occurs on the Web site." *Id.*

As outlined below, personal jurisdiction in this case would be improper.

> **1.   The Court lacks general personal jurisdiction over Defendants because Defendants do not have substantial contacts with Nevada.**

The principle underlying general personal jurisdiction is fundamental fairness: a nonresident defendant whose contacts with the forum state are "continuous and systematic" should not escape the judicial reach of the forum merely because it is not incorporated there or otherwise physically present. Thus, "[e]ven when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its *in personam* jurisdiction when there are sufficient contacts between the State and the foreign corporation." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Conversely, fairness and reasonableness dictate that an organization with only attenuated or sporadic contacts with the forum should not be called upon to defend itself there. *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (holding that personal jurisdiction could not be exercised over individual partners within a partnership absent evidence of their contacts with the forum state).

The standard for general jurisdiction is high: "the…commercial activity must be of a substantial enough nature that it 'approximate[s] physical presence.'" *Gator.com*, 341 F.3d at 1079 quoting *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). Accordingly, the Ninth Circuit has drawn a distinction between "doing business in" the forum state and "doing business with" the forum state. *Bancroft*, 223 F.3d at 1086. "Factors to be

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

546470.1

taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Id.*

No court has exercised general personal jurisdiction over a defendant based solely on that defendant's Internet presence in the forum state. Moreover, while the court in *Gator.com* observed that "even if the only contacts [the defendant] had with California were through its virtual store, a finding of general jurisdiction in the instant case would be consistent with the 'sliding scale' test," the website at issue in that case was "clearly and deliberately structured to operate as a sophisticated virtual store in California." *Gator.com*, 341 F.3d at 1078. The plaintiff in *Gator.com* had alleged that the defendant, a Maine corporation, operated a website "from which very large numbers of California consumers regularly make purchases and interact with [the defendant's] sales representatives." *Id.* In that case the totality of the defendant's contacts with California involved a thriving mail-order component and national print and broadcast advertising. *Id.* The instant case contains no such extensive commercial—or even non-commercial—contacts with Nevada.

In some instances, even where a defendant maintains an interactive website and has other contacts with the forum state, courts have declined to find personal jurisdiction. For example, in *Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008), the Ninth Circuit noted that "[t]he district court summarily, and correctly, rejected Boschetto's contention that the Defendants could be subject to general jurisdiction in California." *Id.* at 1016 n.2 (9th Cir. 2008). The District Court in *Boschetto v. Hansing*, No. C-06-1390, 2006 WL 1980383 (N.D. Cal. 2006), in an unpublished opinion, noted that the plaintiff, a California resident, unsuccessfully argued that the non-resident defendants were subject to general personal jurisdiction in California because their website could be accessed from within the state. The defendants had allegedly sold, via the Internet auction on eBay.com, defective vehicles to the plaintiff. *Id.* at *1.

Here, there is no allegation in Righthaven's Complaint that Defendants are engaged in any commercial activity concerning the State of Nevada whatsoever. There additionally is no allegation that the website sells any products or services. While nothing in the Complaint makes

any claim that such exists, the Declaration of Nathan E. Palmer expressly states that VFTW's website is essentially noncommercial. (NEP Decl. ¶¶ 5-7.) As noted previously, although there are some minor advertisements on VFTW's website, the "clicks" that result in advertising revenue are not tracked by state, as there is no business purpose or reason to do so, and there was essentially zero (0) advertising revenue resulting from the allegedly infringing article that was posted on page eight of a VFTW forum. At most, $.01 (one cent) may have resulted from that page in the forum. (*Id.* ¶¶ 7, 9.) Finally, there is no allegation of any physical presence in Nevada nor that any such business has ever been conducted or even attempted in Nevada by Defendants. The Complaint acknowledges that Defendants are not licensed to do business in Nevada.

The only basis for Plaintiff's claim of jurisdiction is that a user posted one third (1/3) of an article from a Nevada source that discussed American Idol—one showing happened to be in Las Vegas—but mostly dealt with American Idol and its participants. Nor does the Complaint even allege that Nevada is a major focus of Defendants' website. As the Declaration of Nathan E. Palmer points out, no money has been received from Nevada, and less than one half of one percent (0.49%) of visitors to the site are from Nevada—and exactly zero visitors from the State of Nevada visited the forum page that contained the allegedly infringing article. (*Id.*) This can hardly be considered substantial targeting or substantial contact under any test or standard.

The Complaint fails to allege that Defendants: (1) have a physical presence in Nevada; (2) are incorporated there; (3) maintain an office or have any employees in Nevada; or (4) have designated an agent for service of process in the state. The type of activity supporting personal jurisdiction present in *Gator.com* is absent in this case. The only "presence" that the instant Defendants have in Nevada is the non-commercial website, which is accessible to residents of Nevada in the same way that it is accessible to users anywhere in the nation and in most of the rest of the world. (*Id.* ¶ 6.) While the VFTW website does have some level of interactivity due to its forums, it is a far cry from the "sophisticated virtual store" at issue in *Gator.com*.

Here, the Court's initial determination of where along the sliding scale the VFTW website falls is not a difficult decision. An informational website with essentially no commercial activity, such as VFTW's website, is "not grounds for the exercise of personal jurisdiction" under *Zippo*

*Mfg Co.*, 952 F. Supp. at 1124. The lack of any significant commercial exchange and the noncommercial interactivity leads to the conclusion that general personal jurisdiction would be improper in this case. In fact, the VFTW website falls virtually all the way to the passive side of the *Zippo* sliding scale. The website is interactive only in a noncommercial way, allowing individual viewers to discuss topics of interest regarding the talented—and especially not-so-talented—contestants on television shows such as American Idol. It is not a "highly interactive website…from which very large numbers of [forum state] consumers regularly make purchases and interact with [the defendants'] sales representatives." *Gator.com*, 341 F.3d at 1078.

### 2. The Court lacks specific personal jurisdiction over Defendants.

In the absence of general personal jurisdiction, a court may avail itself of specific personal jurisdiction. The Ninth Circuit employs a three-pronged test to determine whether the exercise of specific jurisdiction over a non-resident is appropriate:

(a) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(b) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(c) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Boschetto*, 539 F.3d at 1016. The plaintiff bears the burden of proving the first two prongs. *Id*. If the plaintiff succeeds in establishing that the claim arose out of the defendant's purposeful activity within the forum state, the burden then shifts to the defendant to "come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id*.

### a. Defendants did not perform any purposeful act directed at the State of Nevada or its residents, did not purposefully direct any conduct at Nevada, and there was no foreseeable harm from the allegedly infringing article.

In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court announced the so-called "effects" test for determining when specific personal jurisdiction lies. That test requires that (1) there occurs an intentional act; (2) the act is expressly aimed at the forum state; and (3) the act

causes injury that the defendant knows is likely to be suffered in the forum state. *See Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 986 (9th Cir. 2009). In *Calder*, which involved the publication of allegedly libelous stories about the plaintiff, the Ninth Circuit held that where "California [wa]s the focal point both of the story and of the harm suffered, [j]urisdiction over petitioners [wa]s therefore proper in California based on the "effects" of their Florida conduct in California." 465 U.S. at 789.

The Ninth Circuit has applied this test in the context of a copyright infringement claim, finding that where a defendant "**willfully** infringed copyrights owned by [the plaintiff], which, as [the defendant] knew, had its principal place of business in the Central District [of California]…[t]his fact alone is sufficient to satisfy the 'purposeful availment' requirement." *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997) (emphasis added) rev'd on other grounds in *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998).

The Ninth Circuit "construe[s] 'intent' … as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Brayton Purcell*, 575 F.3d at 986 (internal quotations omitted). Thus, in *Brayton Purcell* the Court found that the defendant "committed an intentional act when it created and posted an elder law section on its website that infringed [the plaintiff's] copyright." *Id.*

In the instant case, Defendants have performed no intentional acts. (*See* NEP Decl. ¶¶ 9-10); (DJDT Decl. ¶ 4.) The allegedly infringing article was not posted by Defendants at all; it was posted by a forum user with an IP address from India. (*Id.*) The only intentional act performed by Defendants relating to the allegedly infringing article was the removal of the article before the lawsuit was filed. (NEP Decl. ¶ 11.) Accordingly, the "intentional act" and the "express aiming" requirements of the effects test could not be satisfied in this case because Defendants did not purposefully direct any conduct at Nevada.

Defendants' website activities must be specifically directed at Nevada residents for personal jurisdiction to be proper. *See Millennium Enters., Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 921 (D. Or. 1999) (declining to exercise jurisdiction where "plaintiff offers no

1  evidence that defendants targeted Oregon residents with the intent or knowledge that plaintiff
2  could be harmed through their Web site," notwithstanding that forum residents could make
3  purchases on defendant's website). If Defendants specifically targeted the content relevant to this
4  case at Nevada residents, then they might be subject to personal jurisdiction in Nevada. *See*
5  *Calder*, 465 U.S. at 790; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir.
6  2004); *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988). That, however, is not
7  the situation here. Even if Defendants did perform a purposeful act regarding the allegedly
8  infringing news article, it would still be insufficient in this case because such acts would not have
9  been focused on Nevada or its residents.

10  The Ninth Circuit has held that "individualized targeting" is sufficient to satisfy the
11 express aiming requirement. *Brayton Purcell*, 575 F.3d at 988. In *Brayton Purcell*, the Court
12 found purposeful direction where the defendant, a southern California law firm, had copied text
13 from the website of the plaintiff, a northern California law firm whose practice extended to
14 southern California, and pasted that text verbatim on its own website. The court reasoned that this
15 individual targeting of a known forum resident, which allegedly created competition for the
16 plaintiff and confusion as to authorship of the text, amounted to express aiming. *Id.* at 987.
17 However, where the effects of the defendant's actions are insufficient to confer jurisdiction,
18 additional contacts must be present. *See Calder*, 465 U.S. at 790; *Schwarzenegger*, 374 F.3d at
19 803; *Sinatra*, 854 F.2d at 1195.

20  In the instant case, Defendants did not direct any conduct or attempt to conduct any actual
21 commerce with Nevada residents. The information that VFTW provides to Nevada's residents is
22 the exact same as it provides to residents of New York, California, and any other state or nation
23 where the website is accessible. Nevada receives no different treatment, nor is there any
24 indication that the website's information is specifically tailored to Nevada residents more than
25 those of any other state. In fact, as the Declaration of Nathan E. Palmer states, Nevadans comprise
26 a minuscule portion of visitors to the website—and comprise no portion of the visitors to the
27 forum page where the allegedly infringing article was temporarily posted. (NEP Decl. ¶¶ 8-9.)
28 / / /

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

546470.1

Defendants therefore have not expressly aimed their conduct at Nevada. Nor have Defendants engaged in the type of individual aiming found in *Brayton Purcell*. In that case, those defendants placed themselves in direct competition with the plaintiff in a district where both the plaintiff and the defendants did business. In contrast here, VFTW acts solely as a source of information and forums for people to discuss entertaining contestants on television shows such as American Idol.

Moreover, in cases such as *Brayton Purcell* there was a commercial element to the defendants' activities. Here, there is no allegation of any commercial element at all. All that Righthaven's Complaint alleges is that an article was posted from a Las Vegas news paper dealing with American Idol contestants' singing during a temporary stop in Las Vegas, and nothing more. VFTW's content rarely deals with Nevada. In this case, at most, a forum user provided a portion of a LVRJ article, including a link to the LVRJ website, to discuss an American Idol weekly show. There was no commercial element to the activities, and Defendants received essentially no compensation due to the discussion. (*Id.* ¶¶ 9, 11.)

Finally, with respect to the third requirement of the effects test, foreseeable harm, "this element is satisfied when defendant's intentional act has 'foreseeable effects' in the forum." *Brayton Purcell*, 575 F.3d at 988. "[T]his element does not require that the 'brunt' of the harm be suffered in the forum, as some previous cases had suggested, and that this element may be established even if the 'the bulk of the harm' occurs outside the forum" *Id.* citing *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006). In this case, there is no specific *factual* allegation of harm to Righthaven—Righthaven's conclusory legal assertions are for a Court to decide—much less any allegation of foreseeability.

Moreover, "the foreseeability that is critical to due process analysis … is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being hauled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Such is not the case here; not only did Defendants not post the allegedly infringing article, but they did not know that the article was posted in the VFTW forum. Once Defendants found out about the allegedly infringing article, they promptly removed it. (NEP Decl.

¶ 11.) Under no circumstances could such conduct provide Defendants with reasonable anticipation of being hauled into court in Nevada. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

                        **b.    Plaintiff's claims did not arise out of any Nevada-related activity by Defendants.**

In order for the Nevada Court to exercise specific personal jurisdiction over Defendants, the claim at issue—copyright infringement—must have arisen from or be related to Defendants' Nevada-related activities. The Ninth Circuit applies a "but for" test in determining whether a claim arose from a defendant's contacts with the forum state. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). If, but for the defendant's forum-related activities, the plaintiff's injury would not have occurred, the "arising out of" requirement is satisfied. *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1131-32 (9th Cir. 2003).

Courts in the Ninth Circuit have applied this test in the intellectual property context where Internet activity is involved. In *Allstar Marketing Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109 (C.D. Cal. 2009), for example, the court found that the plaintiff's trademark infringement claim arose out of the defendant's sale, through its website, of allegedly infringing items. *Id.* at 1123. In *Brayton Purcell*, the district court held that the "arising out of" requirement was satisfied where "[b]ut for [the defendant's] copyright infringement, which reached into this District and which affected [the plaintiff] in this District, [the plaintiff's] claim would not have arisen." 361 F. Supp. 2d at 1143.

In this case, by contrast, the "but for" test is not satisfied. Defendants did not post the allegedly infringing article. (NEP Decl. ¶ 10); (DJDT Decl. ¶ 4.) Although VFTW's website is accessible to Nevada residents, it is no more accessible there than to residents of any other state. There is no evidence or even allegation that any Nevada residents accessed the article or that any access by Nevada residents to the website was anything more than *de minimis*. In fact, according to the statistical results from the VFTW website, not a single person accessed the allegedly infringing article from the State of Nevada. (NEP Decl. ¶¶ 7-9.) Thus, Righthaven's claims did

not "arise out of" Defendants' Nevada-related activities, and, as a result, specific personal jurisdiction does not exist in this case.

            **c.    The exercise of specific jurisdiction by this Court would not be reasonable.**

An exercise of jurisdiction over a defendant must comport with notions of substantive justice and fair play and must be reasonable. *Boschetto*, 539 F.3d at 1016. The Ninth Circuit considers seven factors when assessing the reasonableness of jurisdiction: (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1021 (9th Cir. 2002); *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993). Courts weigh each of these factors, and no single factor alone is dispositive. *Rio Props*, 284 F.3d at 1021.

Often, the first factor, "interjection," is highly significant to the court's determination regarding the reasonableness of exercising jurisdiction in a particular case. In *Rio Properties*, the Ninth Circuit upheld the District of Nevada's finding that its exercise of specific jurisdiction was reasonable because Rio International, based in Costa Rica, ran advertisements in Nevada and solicited business there through means other than its website. *Id.* Moreover, the plaintiff's principal place of business was in Nevada, making it a convenient forum for litigation, and Rio International had not proposed any alternative forum for litigation. *Id.*

Almost all of the factors on which the Ninth circuit and the District of Nevada have predicated any finding of specific personal jurisdiction are absent in this case. Certainly, the most important of the *Rio* factors weigh in Defendants' favor—Defendants have not interjected themselves into the District of Nevada on a level that gives rise to specific personal jurisdiction. They have only set up an essentially non-commercial, informational website that is accessible to Nevadans on the same basis as others around the world. Additionally, and unlike the defendant in *Rio Properties*, Defendants did not go beyond providing information accessible via the Internet by taking any additional steps, such as advertising or other commercial activity, that would constitute

"interjection" into the forum state. The *Rio Properties* court based its finding of personal jurisdiction upon Rio International's advertising in Nevada. In contrast, Defendants have involved themselves in no advertising or other commercial activity in Nevada, nor is there even a claim that the article in question was ever related to advertising or commercial activity by Defendants.

Second, because Defendants have virtually no contacts with Nevada, they would suffer severe hardship in terms of cost and asymmetries of information if forced to defend a lawsuit in the District of Nevada. VFTW is incorporated in Utah, Nathan E. Palmer is a Utah resident, David J. Della Terza is a resident of Illinois, and Plaintiffs do not allege that any infringing activities took place in Nevada. Thus, any evidence, including testimony, would be located outside of Nevada. Defendants and any third party witnesses would incur significant costs to produce evidence at trial. (NEP Decl. ¶ 12.) It would be plainly unfair for Defendants to be called on to defend themselves in a forum with which they have no contacts and in which they did not anticipate causing injury, especially when it involves a mom and pop operation run by a couple of friends out of their homes.

The fifth factor, the efficient resolution of this dispute, is related to the burden on the Defendants if required to defend this lawsuit in the District of Nevada. Because virtually all of the testimonial and most of the documentary evidence in this matter would be located in Utah, it would be more efficient for a court in Utah to resolve this case.

Defendants acknowledge that there is no risk of conflict with the sovereignty of the District of Nevada, as the claim asserted is a federal one. This factor, therefore, is neutral in this case. Defendants assert, however, that while the District of Nevada has some interest in determining the rights of its citizens, it has no greater interest in doing so than do the federal courts in Utah or Illinois. With respect to the importance of the forum to Plaintiff's interest in convenient and effective relief, this Court, the District of Utah, and the Northern District of Illinois have the power, under the Constitution and the laws of the United States, to provide effective relief for copyright infringement.

/ / /

/ / /

It would be easier to enforce certain kinds of relief, however—for example, the injunctive relief sought by Righthaven—in the Districts of Utah or Northern Illinois because of Defendants' presence there. Thus, this factor weighs against the exercise of jurisdiction by this Court. These courts would also provide an alternative forum for adjudication where Defendants are located. This factor, too, weighs against the exercise of jurisdiction by this Court. Thus, it would not be reasonable for this Court to exercise specific personal jurisdiction over Defendants.

The overwhelming factual evidence in this case demonstrates that there is neither general nor personal jurisdiction over Defendants. *See, e.g.*, *Graziose v. Am. Home Prods. Corp.*, 161 F. Supp. 2d 1149 (D. Nev. 2001) (holding nonresident trade association's maintenance of informational website which had been accessed by Nevada residents could not form basis for establishing specific or general jurisdiction).

## IV.  CONCLUSION

This court lacks jurisdiction over the subject matter of this case because Defendants' contacts with Nevada are insufficient to confer personal jurisdiction to this court—both general personal jurisdiction and specific personal jurisdiction—notwithstanding Righthaven's statements to the contrary. Accordingly, this Court should dismiss Plaintiff's Complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2).

DATED this 16th day of August, 2010.

                                                      LEWIS AND ROCA LLP

                                By:   /s/ John L. Krieger
                                        John L. Krieger (Nevada Bar No. 6023)
                                        LEWIS AND ROCA LLP
                                        3993 Howard Hughes Parkway
                                        Suite 600
                                        Las Vegas, Nevada 89169
                                        (702) 949-8200
                                        JKrieger@LRLaw.com

                                        *Attorneys for Defendants*
                                        *Vote for the Worst, LLC, Nathan E. Palmer,*
                                        *and David J. Della Terza*

# CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b), I certify that I am an employee of LEWIS AND ROCA LLP. and that on this day I caused the document entitled **DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** to be served as follows:

[ ]  by placing same to be deposited for mailing in the United States Mail, in a sealed envelope upon which first class postage was prepaid in Las Vegas, Nevada; and/or

[ ]  Pursuant to Fed. R. Civ. P. 5(b)(2)(D), to be sent via facsimile;

[ ]  to be hand-delivered; and/or

[X]  by U.S. District Court ECF electronic transmission to the following attorneys of record:

STEVEN A. GIBSON, ESQ.
Nevada Bar No. 6656
sgibson@righthaven.com
J. CHARLES COONS, ESQ.
Nevada Bar No. 10553
ccoons@righthaven.com
JOSEPH C. CHU, ESQ.
Nevada Bar No. 11082
jchu@righthaven.com
Righthaven LLC
9960 West Cheyenne Avenue, Suite 210
Las Vegas, Nevada 89129-7701
(702) 527-5900

Attorneys for Plaintiff

Dated this 16th day of August, 2010.

    /s/ Jennifer L. Bryan
Jennifer L. Bryan
An employee of Lewis and Roca LLP

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

546470.1